IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                        No. 15-20078-JPM-dkv

TREVIS GREEN,

        Defendant.

_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION
TO SUPPRESS
_____

On March 26, 2015, the grand jury returned a one-count indictment charging the defendant Trevis Green ("Green"), with possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). (Indictment, ECF No. 1.) Before the court is Green's September 1, 2015 motion to suppress a firearm obtained by Memphis Police Department ("MPD") officers from a warrantless search of American Inn Room 204, 3295 Elvis Presley Blvd, Memphis, Tennessee, on the morning of November 15, 2014. (ECF No. 28.) The government filed a response on September 8, 2015. (Gov't's Resp., ECF No. 32.) The motion was referred to the United States Magistrate Judge for a report and recommendation. (ECF No. 29.) Pursuant to the reference, the court held an evidentiary hearing on November 3, 2015.

At the hearing, the government called one witness, MPD Officer

Demetric Renix ("Officer Renix"), and introduced into evidence a "Rights Waiver Form" signed by Green, (Ex. 1). Green testified on his own behalf and called three additional witnesses: (1) American Inn employee Angela Frost ("Frost"); (2) Green's girlfriend Andrea Bowman ("Bowman"); and (3) MPD Officer Jonathan Bond ("Officer Bond"). Green introduced three exhibits into evidence: (1) the Affidavit of Complaint dated November 15, 2014 and signed by affiant Officer Renix, (Ex. 2); (2) the MPD Record of Arrest dated November 15, 2014, (Ex. 3); and (3) American Inn records for Rooms 204 and 229, (Ex. 4).

After careful consideration of the statements of counsel, the testimony of the witnesses, the evidentiary exhibits, and the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

Officer Renix has been an officer with the MPD for six years and, on November 15, 2014, he was working as a patrol officer assigned to the Raines Station precinct. At 5:24 a.m. on November 15, 2014, Officer Renix received a broadcast from dispatch regarding a 911 call made by Ashley Moore ("Moore").[1] According to the dispatch broadcast, Moore called 911 to report that she was assaulted by a

---

[1] The dispatch broadcast was played during Officer Renix's cross-examination.

2

black male wearing black pants and a black shirt and that she was located at American Inn Room 204.[2] Officer Renix drove to the American Inn, and Officer Bond arrived at the scene a couple of minutes later.

Upon arriving at the American Inn, the officers went to Room 204 and knocked on the door. Green, a black male, answered the door. Officer Renix testified that Green was wearing a black shirt and black pants, and that because Green matched Moore's description, he became a suspect. The MPD officers explained to Green why they were there and replayed the dispatch broadcast to Green. According to Officer Renix, when Green was asked if Moore was inside, Green looked puzzled and stated that he did not know where Moore was. Officer Renix testified that Green's reaction impressed upon him that Green knew Moore.

Officer Renix testified that from his location outside of the hotel room, he could see a firearm on a nightstand inside the hotel room. On cross-examination, Officer Renix testified that it was dark outside but that a lamp was on inside the hotel room. According to Officer Renix, the officers asked Green for permission to enter the hotel room to search for Moore, and Green gave them verbal consent

---

[2]On cross-examination, Officer Renix testified that he did not hear the original 911 call where Moore stated that she was located in Room 204 and the assailant went to Room 229. The only message the officers received was from dispatch, who informed them that the victim was in Room 204. The officers, therefore, did not have any information regarding Room 229.

3

to enter the hotel room. When asked why he did not have Green sign a consent-to-search form, Officer Renix stated that he chose not to retrieve the consent-to-search form from his car in light of the particular circumstances in this case. Because the hotel was located in the second floor, it would have taken the officers some time to get the consent-to-search form from the car.

According to Officer Renix, once in the hotel room, he proceeded to look for Moore but found no other person in the room. Meanwhile, Officer Bond performed a protective sweep and secured the firearm. Green admitted to the officers that the gun belonged to him. Officer Bond ran a gun query in Station B, a database that contains information on stolen guns. Once Officer Bond discovered that the gun was in fact stolen, Green was arrested and charged with theft of property.

Following protocol, the officers attempted to find out if Green had any prior felony convictions. They called both Felony Response and Project Safe Neighborhood; however, because it was so early in the morning, neither answered.

Officer Renix testified that upon arresting Green, the officers verbally advised him of his Miranda rights. Green signed, dated, and initialed the Rights Waiver form, (Ex. 1). According to Officer Renix, Officer Bond read the questions from the Rights Waiver form to Green and wrote down Green's answers on the form. Thereafter, Green was given an opportunity to read the questions and answers in

their entirety and signed the form indicating his acceptance of the responses. One of the questions in the Rights Waiver form inquired whether Green had been convicted of a crime before, to which Green answered "No sir." (Ex. 1.) Officer Renix testified that if Green had admitted that he had been convicted of a crime before, the officers would have charged him with possession of a firearm as convicted felon in violation of 18 U.S.C. § 922(g). As to whether he had been treated fairly, Green answered "Yes sir." (*Id.*)

According to Officer Renix, Green did not appear to be intoxicated and he did not indicate that he could not read or understand. Officer Renix testified that Green spoke freely and voluntarily to the officers, was coherent, and understood everything. On cross-examination, Officer Renix stated that Green was cooperative.

Officer Bond's testimony corroborated Officer Renix's testimony in all respects. Officer Bond was working as a patrol officer on the morning of November 15, 2014. Around 5:30 a.m., Officer Bond received the dispatch broadcast about a domestic assault at the American Inn Room 204. Officer Bond also testified that the dispatch broadcast indicated that the suspect was wearing a black shirt and black pants. Upon arriving at American Inn, the officers

5

knocked on Room 204.³ Green answered the door wearing a black shirt and black jeans. Officer Bond testified that it was dark outside but that the television was on. From his location, Officer Bond observed a pistol on a nightstand. Officer Bond also stated that Green gave the officers verbal consent to enter the room. According to Officer Bond, the officers did not obtain written consent due to the exigency in determining whether the victim was in the room. Officer Bond further testified that the decision to not retrieve the consent-to-search form was also motivated by concerns for their safety; if one officer had stepped away, the other officer would have been left alone with Green and his firearm.

Officer Bond testified that in 2013, he was sanctioned for searching a residence without a warrant. Officer Renix testified that he had worked with Officer Bond for a couple of years but that he was not aware of Officer Bond's sanction at time of the search of Green's hotel room.

Both officers testified that they did not uncover a connection between Green and Moore and that Green was never charged with domestic assault.

Green's version of the events differed from the officers' testimony in several respects. Green testified that, on the early morning of November 15, 2014, he was sleeping at American Inn Room

---

³Officer Bond testified that they went to Room 204 because protocol mandates that the officers first come into contact with the victim.

204 when he heard the officers knock on the door. According to Green, he was wearing boxers and a black shirt. Green testified that no lights were on but that the television was on. Green further testified that the officers could not see the gun from their location and that at no point did they verbally indicate to Green that they saw a gun. Green stated that the officers entered the hotel room and started searching without his consent. On cross-examination, Green testified that Bowman left the hotel room between 2 a.m. and 3 a.m. the morning of November 15, 2014 and that there was no other female in the hotel room after Bowman left.

To establish standing, Green called Frost, an American Inn employee, and Bowman, Green's girlfriend. Frost, who keeps hotel records in the regular course of her job, testified that Bowman rented American Inn Room 204 on November 13, 2014 and checked out on November 15, 2014. (*See* Ex. 4.) Bowman also testified that she paid for American Inn Room 204 for the night of November 14, 2014. She left the hotel on November 15, 2014 between the early hours of 2 a.m. and 3 a.m. Bowman testified that Green was her guest and that there was no one else in the room beside her and Green.

II. PROPOSED CONCLUSIONS OF LAW

A. <u>Whether the Fourth Amendment's Protections Apply to Green's Hotel Room</u>

As a preliminary matter, the court must determine whether the protections of the Fourth Amendment apply to Green's hotel room. The

Fourth Amendment protects against warrantless intrusions into "constitutionally protected area[s]," *Silverman v. United States*, 365 U.S. 505 (1961), which the Supreme Court defines as places where an individual has a reasonable expectation of privacy. *Katz v. U.S.*, 389 U.S. 347 (1967) (Harlan, J. concurring) (stating a two prong test for determining whether an individual has a reasonable expectation of privacy: "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable'"). Thus, to determine whether an individual may bring a Fourth Amendment challenge for the warrantless search of a hotel room, the individual must have a reasonable expectation of privacy in the hotel room. *Rakas v. Illinois*, 439 U.S. 129, 143-44 (1978).

The Supreme Court has stated that a person does not relinquish his expectation of privacy merely because he is in a hotel room. *See Stoner v. California*, 376 U.S. 483, 486-90 (1967); *Hoffa v. U.S.*, 385 U.S. 293, 301 (1966) ("A hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office."); s*ee also U.S. v. Whitten*, 706 F.2d 1000, 1016 (9th Cir. 1983) (concluding that the mere fact that an individual was arrested in the doorway of his hotel room did not establish exigent circumstances to enter to conduct a search without a warrant); *cf. United States v. Riascos-Suarez*, 73 F.3d 616, 625 n.3 (6th Cir. 1996) (opining that the defendant no longer had a legitimate expectation of privacy in

8

his girlfriend's hotel room because he had checked out earlier).

Here, the government concedes that Green had a reasonable expectation of privacy in the hotel room. Although the hotel room was reserved in Bowman's name, Green was Bowman's guest and remained at the hotel after Bowman left. Unlike the defendant in *Riascos-Suarez*, there is no evidence that Green had checked out of the room or relinquished control of the room. The Fourth Amendment, therefore, applies to the search of Green's hotel room.

B. <u>Whether Green Gave Valid Consent to the Search of his Hotel Room</u>

Green claims he did not give consent to the officers to search his hotel room, and thus, the warrantless search was invalid. The government asserts that Green gave Officers Renix and Bond verbal consent to search and that Green's consent was free and voluntary.

Police may conduct a warrantless search only where an exception to the Fourth Amendment warrant requirement applies. U.S. Const. amend. IV; *United States v. Roarke*, 36 F.3d 14, 17 (6th Cir. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). A search conducted with the individual's voluntary consent is an exception to the Fourth Amendment's proscription on warrantless searches. *Schneckloth v. Bustmonte*, 412 U.S. 218, 219 (1973). An individual's consent is valid only if it is knowing and voluntary. *Id.* The voluntariness of consent must be determined from the totality of circumstances. *Id.* at 227. The Sixth Circuit described the

9

analysis for determining the validity of a consent to search in *United States v. Riascos-Suarez*, 73 F.3d 616 (6th Cir. 1996), as follows:

> Several factors should be examined to determine whether consent is valid, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police.

*Id.* at 625 (citations omitted). The voluntariness of consent is a question of fact, to be proved by the government by a preponderance of the evidence through "clear and positive testimony." *Riascos-Suarez*, 73 F.3d at 625.

Where there are two competing accounts of the events surrounding a warrantless search, the court must make a finding of fact based on the credibility of the witnesses it observes at the suppression hearing. *United States v. Taylor,* 956 F.2d 572, 576 (6th Cir. 1992) (quoting *United States v. Rose,* 889 F.2d at 1490, 1494 (6th Cir. 1989)). "Where the issue of consent depends on the credibility of witnesses, district courts have significant discretion to credit one account over another." *United States v. Perry*, No. 09-20324, 2011 WL 184014, at *4 (W.D. Tenn. Jan. 19, 2011), *aff'd*, 703 F.3d 906 (6th Cir. 2013)(citing *United States v. Dillard,* 438 F.3d 675, 681 (6th Cir. 2006); *see also United States v. Haynes,* 301 F.3d 669, 679 (6th Cir. 2002). To weigh the credibility of different witnesses, the court may consider whether one account is more plausible on a certain issue, whether there are inconsistencies in the witnesses testimony,

whether the defendant is a "sophisticated and experienced criminal," and whether there was evidence that the defendant was "cordial, cooperative, and helpful" to officers. *U.S. v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (finding that the defendant consented to the warrantless search based on officers credible testimony despite noting certain inconsistencies); *U.S. v. Abdullah*, 162 F.3d 897, 902 (6th Cir. 1998) (finding consent notwithstanding defendant's claim that he was unable to understand the officer's search request based in part on the finding that the officers testimony was credible); *Perry*, 2011 WL 184014 at *4.

Whether Green gave consent to search his hotel room is a finding of fact contingent on the credibility of the testimony given at the suppression hearing. Officers Renix's and Bond's accounts of the events corroborate a conclusion that Green gave verbal consent to the search of the hotel room. Officers Renix and Bond testified consistently with one another and their testimony is plausible. In addition, Officer Renix relayed a consistent version of the event in the Affidavit of Complaint, (Ex. 2), and the MPD Record of Arrest, (Ex. 3). In both these documents, Officer Renix wrote that Green gave verbal consent to search.

Moreover, the court finds Green's testimony to be unbelievable in its entirety. First, as the defendant in this case, Green has "a strong interest in presenting a version of events that would lead to the suppression of the evidence." *United States v. Anguiano*, 11

11

F. App'x 415, 416-17 (6th Cir. 2001). Further, while completing the Rights Waiver form, Green indicated that he had not been convicted of a crime. (Ex. 1.) As Officer Renix testified, had Green told the truth, the officers would have immediately charged him with being a felon in possession of a firearm. Because Green was not forthright in giving statements against his interest in the past, the court finds that Green lacks credibility as to the issue of whether he gave verbal consent to the officers to enter and search his hotel room. Therefore, the court finds the consistent testimonies of the officers to be more reliable than Green's testimony. The court accepts the officers' testimony as fact and finds as fact that Green consented to the search of his hotel room.

Regarding the validity of consent, the court finds that under the totality of the circumstances, Green's consent was free and voluntary. The court finds that Green, who is thirty-two years old, is articulate and at least of average intelligence. No evidence was presented at the hearing of any police-induced coercion or duress to rebut the government's showing that Green's consent was freely and voluntarily given. Further, there was no evidence that Green did not understand the officers' request to enter the hotel room or that Green did not understand his constitutional rights. In fact, Green has prior experience with the criminal justice system because he has a prior felony conviction. The fact that Green was not

presented with a consent-to-search form does not necessarily render his consent invalid. *See Perry*, 2011 WL 184014, at *7.

Lastly, the court is also persuaded by the officers' analogous testimony that Green was cooperative during the encounter with the officers. *See Van Shutters*, 163 F.3d at 336 ("The district court was further persuaded that [the defendant] had consented to the search of [his residence] by reports of other officers that [the defendant] was 'cordial, cooperative, and helpful' during interviews . . . ."). Green's responses to the questions in the Rights Waiver form and the fact that he voluntarily waived his Miranda rights, (Ex. 1), also support a finding that Green's consent was free and voluntary. In the Rights Waiver form, Green indicated that he answered the officers' questions freely and voluntarily, without any threats, coercion, or promises, and that, he was treated fairly by the officers. (Ex. 1.)

Accordingly, the court finds that the officers' testimony is credible and that Green voluntarily consented to the search of his hotel room.

C. <u>Whether the Search was Justified Based on Exigent Circumstances</u>

Alternatively, the search of Green's hotel room was reasonable due to exigent circumstances. A search based on exigent circumstances is an exception to the warrant requirement. *See Payton v. New York*, 445 U.S. 573, 587-88 (1980)(holding that "absent exigent circumstances, a warrantless entry to search . . . is

13

unconstitutional even when . . . there is probable cause to believe that incriminating evidence will be found"). Exigent circumstances traditionally exist in one of four situations: (1) when evidence is in immediate danger of destruction, *Schmerber v. California,* 384 U.S. 757, 770-71 (1966); (2) when the safety of law enforcement officers or the general public is immediately threatened, *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 298-99 (1967); (3) when the police are in hot pursuit of a fleeing suspect, *United States v. Santana,* 427 U.S. 38, 42-43 (1976); or (4) when the suspect may flee before an officer can obtain a warrant, *Minnesota v. Olson,* 495 U.S. 91, 100 (1990). *Causey v. City of Bay City*, 442 F.3d 524, 529 (6th Cir. 2006)(summarizing exigent circumstances).

"The safety exigency permits officers to make a warrantless entry into a residence 'when they reasonably believe that a person within is in need of immediate aid.'" *Causey*, 442 F.3d at 529 (citing *Mincey v. Arizona,* 437 U.S. 385, 392 (1978)). Thus, officers have "an indisputable right 'to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists.'" *Tobias v. Pletzke*, 933 F. Supp. 2d 892, 911 (E.D. Mich. 2013)(quoting *Georgia v.* Randolph, 547 U.S. at 103, 118 (2006)).

Given the circumstances of this case, the search of Green's hotel room was justified based on exigent circumstances. The officers were informed that an assault had occurred and that the

victim was located in American Inn Room 204.  Some courts have found that a 911 call alone may justify a warrantless entry into a dwelling. *See Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003)(discussing decisions from other courts finding that a 911 call justified a warrantless search under the exigent circumstances exception).  Although the Sixth Circuit has not previously held that a 911 call alone may justify a warrantless entry, *see id.*, the totality of the circumstances, justified entry into Green's hotel room.

The following information was available to the officers before they entered Green's hotel room.  Moore had placed a 911 call reporting an emergency, an assault, at American Inn Room 204.  The dispatcher relayed this information to the officers, along with a description of the assailant.  When Green answered the door, the officer noticed that Green matched the description of the assailant.  At that point, the officers were still unaware of Moore's location or whether she was safe.  Green's answer that he did not know where Moore was gave the officers the impression that Green knew Moore.  Although the officers never substantiated Moore's allegations or connected Green to the 911 call, the probability of criminal activity is based on "an examination of all facts and circumstances within an officer's knowledge at the time" of the search.  *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003)(citations and internal quotation marks omitted).  Given the facts within the officers'

knowledge at the time, the officers reasonably believed that an exigency existed.

Even if exigency to support a search did not exist at this point, such exigency arose once the officers saw a firearm in plain view on the nightstand. Although it was dark outside, all testimonial evidence reveals that there was light coming from inside the room, either from a lamp or the television. Further, the officers were lawfully positioned when the firearm came into plain view. The presence of the firearm was "an unexpected and intervening development . . . that . . . changed drastically the complexion of the entire situation and worsened the danger inherent therein." *United States v. Scott*, 578 F.2d 1186, 1190 (6th Cir. 1978)(citing *United States v. Shye*, 492 F.2d 886, 892 (6th Cir. 1974)). Because there were only two officers present, the officers were justified in fearing for their safety if they did not act swiftly to secure the gun. Given these facts, the officers acted reasonably when they entered the hotel to secure the gun and search for Moore. *See Shye*, 492 F.2d at 892-93 (stating that occurrences after the officers' arrival at the scene strengthened the probable cause and justified entry based on exigent circumstances).

"The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Hayden*, 387 U.S. at 298-99. An attempt to obtain a warrant at 5:00 a.m. would result in a

16

significant delay.  Only a thorough search of the room could have insured that Moore was not present in the room and that the officers "had control of all weapons which could be used against them or to effect an escape."  *See id.* at 299.  Accordingly, the circumstances present in the instant case constitute exigent circumstances and compel the conclusion that the officers acted reasonably.

III.  RECOMMENDATION

For the reasons expressed above, it is recommended that the Green's motion to suppress be denied.

Respectfully submitted this 9th day of November, 2015.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.