IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF TENNESSEE
                               WESTERN DIVISION

|                                |   |                        |
|--------------------------------|---|------------------------|
| UNITED STATES OF AMERICA,      | ) |                        |
|                                | ) |                        |
|     Plaintiff,                 | ) |                        |
|                                | ) |                        |
| v.                             | ) | No. 2:15-cr-20078-JPM-dkv |
|                                | ) |                        |
| TREVIS GREEN,                  | ) |                        |
|                                | ) |                        |
|     Defendant.                 | ) |                        |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND
            DENYING DEFENDANT'S MOTION TO SUPPRESS**

    Before the Court is Defendant Trevis Green's ("Defendant") Corrected Motion to Suppress and Supporting Memorandum of Law, filed September 1, 2015. (ECF No. 28.)

    The Court referred the Motion to the Magistrate Judge for Report and Recommendation. (ECF No. 29.) The Government filed a Response to the Motion to Suppress on September 8, 2015. (ECF No. 32.) The Magistrate Judge held an evidentiary hearing on November 3, 2015. (Min. Entry, ECF No. 39.) The Government called one witness at the hearing, Officer Demetric Renix of the Memphis Police Department. Defendant called four witnesses at the hearing: (1) Angela Frost, an employee of the American Inn, (2) Andrea Bowman, Defendant's girlfriend, (3) Officer Jonathan

Bond of the Memphis Police Department, and (4) himself. (See id.)

Following the evidentiary hearing, on November 9, 2015, the Magistrate Judge issued a Report and Recommendation on Defendant's Motion to Suppress (R. & R., ECF No. 40), recommending that the motion be denied.

Defendant filed Objections to the Magistrate Judge's Report and Recommendation on November 25, 2015. (Def.'s Objs., ECF No. 45.) The Government responded to the objections on December 17, 2015. (ECF No. 53.)

After de novo review, the Court ADOPTS the Magistrate Judge's Amended Report and Recommendation and DENIES Defendant's Motion to Suppress.

**I. Background**

Defendant was indicted on one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). (ECF No. 1.) He seeks to suppress evidence of a firearm obtained in a warrantless search of his hotel room at the American Inn, 3265 Elvis Presley Boulevard, Memphis, Tennessee, on November 15, 2014. (Mot. to Suppress at PageID 39-40.)

On November 15, 2014, Ashley Moore contacted the Memphis Police Department to report that she was being assaulted or had been assaulted at the American Inn located at 3265 Elvis Presley Boulevard. (Mot. to Suppress Hr'g Tr. 9, 12, ECF No. 54.) The

victim informed dispatch that she was located in room 204 and that her assailant was in room 229, but dispatch relayed to the officers only the information regarding room 204. (Id. at 9, 25, 29-30, 58.)

Officers Demetric Renix and Jonathan Bond arrived at the property at approximately 5:30 a.m. (Id. at 8, 58.) The officers knocked on the door of room 204, and Defendant answered the door. (Id. at 11.) Defendant matched the description of the suspect: a black male wearing black pants and a black shirt. (Id. at 11, 29, 59-60.) After Defendant denied that Ashley Moore was inside the room, the officers replayed for Defendant the dispatch call that identified room 204. (Id. at 12-13, 61.)

While the officers were standing outside the doorway, they observed a handgun on the nightstand inside the hotel room. (Id. at 13, 53.) Officer Renix testified that although it was dark outside, there was a lamp on inside the room. (Id. at 28.) Officer Bond recalled that there was a TV on inside the room. (Id. at 55.) Defendant also testified that the TV was on, but that no other lights were on inside the room. (Id. at 69.)

The officers then asked Defendant for permission to enter the room to search for Moore, and Defendant orally consented to the officers' search of the room. (Id. at 14, 61-62; see also Mot. to Suppress Hr'g Ex. 3, at 1.) Officer Bond explained that they did not obtain a written consent to search because he did

3

not want to leave his partner alone with an armed individual to go to the vehicle to get the form. (Id. at 54, 62.) Defendant told the officers that it was his hotel room. (Id. at 35.) Defendant's girlfriend, Andrea Bowman, in fact, had rented room 204 on the night of November 14, 2014, and Defendant was her guest that night. (Id. at 43, 47.)

Upon entering the room, Officer Bond secured the firearm while Officer Renix searched the room for the victim. (Id. at 14.) Officer Bond ran a query on the gun, which indicated that the gun was stolen. (Id. at 14-15, 62.) The officers attempted to contact felony response to determine whether Defendant was a felon, but were unable to do so because of the time of day. (Id. at 16.) The officers seized the firearm and arrested Defendant for theft of property. (Id. at 17.) The officers then advised Defendant of his Miranda rights and Defendant agreed to speak with the officers freely and voluntarily. (Id. at 18.)

Defendant is a convicted felon. On the day of the search, the officers asked Defendant whether he had ever been convicted of a crime, and Defendant responded that he had not. (Id. at 21.) At the suppression hearing held on November 3, 2015, the Government introduced into evidence a "Rights Waiver Form," signed by Defendant, which reflected that Defendant informed the officers that he had never been convicted of a crime and that

4

Defendant stated that he had been treated fairly. (Mot. to Suppress Hr'g Ex. 1.)

**II. Standard of Review**

"[A] district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations. 28 U.S.C. §636(b)(1)(C). The Court is not required to review those aspects of the Report and Recommendation to which no objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The Court should adopt the findings and recommendations to which there is no objection. Id.; see also United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

**III. Analysis**

The Magistrate Judge recommended that Defendant's Motion to Suppress be denied. (R. & R. 2.) In doing so, the Magistrate Judge proposed the following conclusions: (1) Defendant had a reasonable expectation of privacy in the hotel room; (2) Defendant freely and voluntarily consented to the search of his hotel room; (3) alternatively, the search of Green's hotel room was reasonable due to exigent circumstances; and (4) the officers' search of Defendant's hotel room did not violate Defendant's Fourth Amendment rights. (Id. at 7-17.)

### A. Defendant's Objections to Proposed Findings of Fact

Defendant objects to the Magistrate Judge's proposed findings of fact in that the Report and Recommendation was silent as to the facts that (1) Officer Bond admitted that, after leaving Defendant's hotel room, no further efforts were made to locate Ashley Moore despite the officers' statement that exigent circumstances existed and (2) Defendant testified that he did not tell the officers that he knew Ashley Moore. (Def.'s Objs. 1.) Upon de novo review, the Court finds that Defendant's Motion to Suppress should be denied for the reasons set out in the Magistrate Judge's Report and Recommendation and as further discussed herein.

Defendant points out that the Report and Recommendation "was silent as to the crucial fact that although Officer Bond and the Magistrate Court stated that exigent circumstances . . . existed because of the safety of the 911 caller, Bond himself admitted that once leaving the apartment in question, no further efforts were made to locate the alleged victim, Ashley Moore." (Id.)

At the hearing, Officer Bond testified that, after failing to find the complainant in room 204, the officers attempted to re-contact the complainant, but were unable to do so:

Q. So did you eventually talk to Ashley Moore?

A. No, we didn't.

6

> Q. So y'all never found the victim?
>
> A. Never found the victim.
>
> . . .
>
> Q. Okay. Did y'all knock on every door and try to find Ashley Moore?
>
> A. No, we did not.
>
> Q. So she could have been bleeding somewhere and you just never would have known. Once you got the guy with the gun, you were done.
>
> A. Well, we asked dispatch several times call back on the complainant and got no response.

(Mot. to Suppress Hr'g Tr. 64-65.) Officer Bond's testimony contradicts Defendant's contention that the officers made "no further efforts . . . to locate the alleged victim." (Def.'s Objs. 1.) Accordingly, Defendant's objection is OVERRULED.

Second, Defendant submits that the Magistrate Judge should have noted that "Defendant testified that he did not tell these officers that he knew the alleged victim, Ashley Moore." (Def.'s Objs. 1.) A careful review of the hearing transcript reveals that, despite Defendant's contention, Defendant did not testify as to this fact. (See Mot. to Suppress Hr'g Tr. 67-71.) Accordingly, Defendant's objection is OVERRULED.

### B. Defendant's Objections to Proposed Conclusions of Law

Defendant raises three objections to the Magistrate Judge's proposed conclusions of law: (1) the Court incorrectly found

that Defendant consented to a search of his hotel room; (2) based on the officers' failure to take further efforts to locate the victim, there were not exigent circumstances to enter the room; and (3) the officers' observation of a gun in the hotel room did not create an exigent circumstance. (Def.'s Objs. 2-3.) Each of these objections turn on the Magistrate Judge's credibility determinations. Accordingly, the Court first considers the Defendant's general objection to the Magistrate Judge's credibility determinations, and then addresses each of Defendant's objections in turn.

   **1. Credibility Determination**

"When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues." United States v. Bermudez, 238 F.3d 424, 2000 WL 1871676, at *3 (6th Cir. 2000) (unpublished table decision) (citing United States v. Raddatz, 447 U.S. 667, 675-76 (1980)). "When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears." United States v. Johnson, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011) (quoting United

States v. Robinson, No. 1:07-CR-1, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007)). In general, "[c]redibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." Id. (quoting Robinson, 2007 WL 2138635, at *1); see also United States v. Irorere, 69 F. App'x 231, 236 (6th Cir. 2003).

The Magistrate Judge's credibility determination was based on the testimony of Officer Renix, Officer Bond, and Defendant, as well as the documents admitted into evidence during the suppression hearing. The Magistrate Judge found:

> Officers Renix and Bond testified consistently with one another and their testimony is plausible. In addition, Officer Renix relayed a consistent version of the event in the Affidavit of Complaint, (Ex. 2), and the MPD Record of Arrest, (Ex. 3). In both of these documents, Officer Renix wrote that Green gave verbal consent to search.
>
> Moreover, the court finds Green's testimony to be unbelievable in its entirety. First, as the defendant in this case, Green has "a strong interest in presenting a version of events that would lead to the suppression of the evidence." Further, while completing the Rights Waiver form, Green indicated that he had not been convicted of a crime. (Ex. 1.) As Officer Renix testified, had Green told the truth, the officers would have immediately charged him with being a felon in possession of a firearm. Because Green was not forthright in giving statements against his interest in the past, the court finds that Green lacks credibility as to the issue of whether he gave verbal consent to the officers to enter and search his hotel room. Therefore, the court finds the consistent

9

> testimonies of the officers to be more reliable than Green's testimony.

(R. & R. 11-12 (citation omitted).)

Defendant points out that the officers' testimony was inconsistent as to the light source in the hotel room and their reasons for not retrieving a consent-to-search form. (Def.'s Objs. 2.) Defendant contends that Officer Bond's failure to obtain written consent to search in light of a past sanction for searching a residence without a warrant renders him not credible. (Id. at 2-3.) Defendant also contends that he was credible because "there is no objective indication of a lack of credibility" aside from his statement that he did not have a felony. (Id. at 2.)

The Court finds that the Magistrate Judge's credibility determinations are supported by evidence in the record. The record reflects that Defendant falsely informed the officers that he had never been convicted of a crime and signed a form verifying that this statement was true. (Mot. to Suppress Hr'g Ex. 1.) The Court agrees with the Magistrate Judge's finding that "[b]ecause Green was not forthright in giving statements against his interest in the past . . . Green lacks credibility as to the issue of whether he gave verbal consent to the officers to enter and search his hotel room." (R. & R. 12.)

Defendant is correct that there are minor inconsistencies in the officers' testimony.  Although both officers recalled one light source in the hotel room, Officer Renix believed it to be a lamp, while Officer Bond believed it to be the television. (Mot. to Suppress Hr'g Tr. 28, 55.)  Similarly, although both officers testified that the need to check on the victim created an exigent circumstance (id. 36, 64-65), Officer Bond also emphasized that he could not leave his partner alone with an armed individual (id. 54).

A review of the transcript reveals, however, that the officers' testimony was largely consistent.  Both officers testified that dispatch directed them to room 204 (Mot. to Suppress Hr'g Tr. 9, 52); both officers testified that Green was wearing black pants and a black shirt (id. at 10, 60); both officers testified that there was a light source in the room (id. at 28, 55); both officers testified that they observed a firearm on the nightstand in the room (id. at 13, 53); both officers testified that Defendant provided verbal consent to enter the room (id. at 14, 53); and both officers testified that they did not obtain written consent due to circumstantial difficulties in retrieving the form (id. at 36, 54, 64-65). Additionally, the Affidavit of Complaint and Memphis Police Department Record of Arrest, both completed by Officer Renix,

corroborated the officers' testimony that Defendant provided verbal consent.  (Mot. to Suppress Hr'g Exs. 2, 3.)

Additionally, the Magistrate Judge did consider Officer Bond's past sanction in evaluating his credibility.  The Report and Recommendation mentioned that "Officer Bond testified that in 2013, he was sanctioned for searching a residence without a warrant."  (R. & R. 6.)  This statement in the proposed findings of fact is sufficient to demonstrate that the Magistrate Judge considered the fact of Bond's past sanction.  Thus, the Magistrate Judge properly considered this fact in her credibility evaluation and, despite this fact, determined that the officers were more credible than Defendant.  (Id. at 12.)[1]

The Magistrate Judge saw and heard the witnesses testify during the hearing, and accordingly, was in a better position to judge the demeanor and credibility of the witnesses.  The transcript gives the Court no reason to question the Magistrate Judge's assessment that the officers were credible witnesses or that Defendant was not credible.  Absent such a reason, the Court adopts the Magistrate Judge's factual findings that the officers were credible and Defendant was not.

---

[1] The Court also notes that Officer Bond's past sanction does not, by itself, result in an inability to perform a warrantless search without obtaining written consent.  Like all police officers, Officer Bond was permitted to conduct a warrantless search where an exception to the Fourth Amendment warrant requirement applies.  See U.S. Const. amend. IV; United States v. Roarke, 36 F.3d 14, 17 (6th Cir. 1994) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)).

**2. Consent to Search**

Defendant argues that because the Magistrate Judge incorrectly evaluated the officers' and Defendant's credibility, she "incorrectly surmised that a valid, voluntary consent to search was obtained by the officers." (Def.'s Objs. 3.) As discussed above, however, the Court defers to the Magistrate Judge's credibility determinations. Irorere, 69 F. App'x at 236. Officers Renix and Bond both testified that Defendant consented to the search of his hotel room. (Mot. to Suppress Hr'g Tr. 14, 53.) The Affidavit of Complaint and Memphis Police Department Record of Arrest further reflect that Defendant "allowed officers inside." (Mot. to Suppress Hr'g. Exs. 2, 3.) Thus, the Court agrees with the conclusion that Defendant consented to the search of his hotel room and, accordingly, OVERRULES Defendant's objection.

**3. Exigent Circumstances Based on the Victim**

Defendant contends that, because Officer Bond "admittedly made no further effort to locate [the] victim," there was no exigency to enter the room based on the safety of the victim. (Def.'s Objs. 3.) Defendant further contends that Bond's admission that he had been sanctioned for failing to obtain a warrant in the past was not appropriately considered. (Id.)

As discussed above, Officer Bond did not admit that he made no further effort to locate the complainant. See supra Part

13

III.A.  Rather, Officer Bond asked dispatch several times to try to contact the complainant to no avail.  (Mot. to Suppress Hr'g Tr. 65.)  The only information provided to the officers was that the victim was in room 204.  (Id. at 9-10, 23, 52, 58-59.)  Thus, the true "fishing expedition" would have been knocking on every door at the American Inn to try to locate the complainant without any further leads regarding her whereabouts.  (ECF No. 45 at 3.)

Additionally, the Magistrate Judge did consider Officer Bond's past sanction for searching a residence without a warrant.  See supra Part III.B.1 (citing R. & R. 6).  The Magistrate Judge determined that Officer Bond was a credible witness, and properly credited his testimony that "it was an emergent situation because there was a victim and [they] had to check on her."  (Mot. to Suppress Hr'g Tr. 65.)

The record reflects that Officer Bond did, in fact, attempt to locate the complainant after arresting Defendant.  The record further reflects that the Magistrate Judge considered Officer Bond's past sanction in its credibility analysis.  Accordingly, the Court OVERRULES Defendant's objection to the Magistrate Judge's finding that exigent circumstances existed based on the victim's safety.

### 4. Exigent Circumstances Based on the Firearm

Defendant also objects to the finding that seeing a gun in the hotel room created an exigent circumstance "based on the inconsistent testimony of the officers as to the light source . . . in the hotel room." (Def.'s Objs. 3.) Defendant further argues that the Magistrate Judge failed to take into account Officer Bond's past sanction. (Id.)

As discussed above, the Court finds that the Magistrate Judge's credibility determinations are supported by the record and, therefore, defers to these determinations. See supra Part III.B.1. Although the officers testified as to different light sources, both officers recalled some light source in the room that permitted them to see the firearm on Defendant's nightstand. See id. Additionally, Officer Bond testified that he could not leave his partner with an armed individual to retrieve the consent-to-search form from the patrol vehicle. (Mot. to Suppress Hr'g Tr. 54, 62, 64-65.) The Court finds that both officers observed the firearm from outside the hotel room and "were justified in fearing for their safety if they did not act swiftly to secure the gun." (R. & R. 16.) Accordingly, the Court OVERRULES Defendant's objection to the Magistrate Judge's finding that exigent circumstances existed based on the presence of the firearm.

**V. CONCLUSION**

For the foregoing reasons, upon de novo review, the Court ADOPTS the Magistrate Judge's Report and Recommendation as supplemented by this Order. Defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED**, this 4th day of January, 2016.

/s/ Jon P. McCalla_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE